Argued December 4, 1974, reversed and remanded
January 30, 1975

DEAN, *Appellant, v.* EXOTIC VENEERS,
INC. ET AL, *Respondents,* BOER ET AL, *Intervenors.*
531 P2d 266

*Richard V. Bayless* of Bauer, Murphy, Bayless & Fundingsland, Portland, argued the cause and filed briefs for appellant.

*Donald H. Coulter* of Myrick, Coulter, Seagraves & Nealy, Grants Pass, argued the cause for intervenors. With him on the brief was Michael Henderson, Grants Pass, counsel for respondents.

Before O'CONNELL, Chief Justice, and McALLISTER,

HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

## HOLMAN, J.

This is an action at law to recover an amount alleged to be due plaintiff for services rendered as general manager of the defendant corporation from 1962 to 1972. The defendant Thompson is the court-appointed receiver for liquidation of the defendant corporation; intervenors are defendant corporation stockholders who are resisting plaintiff's claim. Because their interests are identical, all parties other than plaintiff will be termed defendants. Plaintiff's claim is stated in two counts: the first upon an express contract for plaintiff's services; the second upon *quantum meruit* for the reasonable value of those services. Plaintiff appeals from a judgment for defendants which was rendered pursuant to a directed verdict upon the ground of res judicata.

Prior to the commencement of the present action plaintiff had submitted a claim to the receiver for the payment of an amount due plaintiff under an alleged contract for services for the period in question. The receiver filed a petition with the circuit court having jurisdiction of the receivership for a determination of plaintiff's claim. A hearing on the merits was then held before the court which resulted in the court's directing the receiver to deny the claim. No appeal was taken from this determination. Plaintiff subsequently filed the present action.

Plaintiff first contends, without citation of authority, that the receivership court's denial of his claim is not a "final order" disposing of his contract claim

pursuant to ORS 19.010(2)(c) so as to be appealable and thus, is not the basis for a defense of res judicata. Assuming the trial court's determination would have to be appealable under the statute in order to support a defense of res judicata, plaintiff's position is not well taken and is refuted by Section 7924 of 16 Fletcher Cyclopedia of the Law of Corporations 660-61 (rev ed 1962):

"It is the usual practice for the court [where a receiver has been appointed] to refer the proof of all claims to a master in chancery or a special master. Claims are tried before him as before a court without a jury. Occasionally unusual claims are first tried before the court itself.

"All claims heard by the master in chancery are reported by him to the court. In the federal courts, unless exceptions are filed to the report within the required interval, the report stands confirmed. If exceptions are duly filed, the court will hear argument thereon, and render its decisions, either confirming, modifying or reversing the report of the master. The usual appeals may be taken from the decision of the court.

"The report of the master recommending the payment of claims, followed by the court's entry approving the same, constitutes a judgment of the court." (Footnotes omitted.)

Plaintiff's principal contention is that even if his first count on a specific contract may not be relitigated, he is not precluded from litigating a claim based on the reasonable value of his services. As we said in *Gwynn v. Wilhelm,* 226 Or 606, 608, 360 P2d 312 (1961):

"In applying the doctrine of *res judicata* it is necessary first to determine whether the second action is upon the same cause of action as the first or whether the two actions are upon different

causes of action. If the second action is upon the same cause of action the judgment in the first action is conclusive as to all matters which were litigated or which might have been litigated in the first action. If the second action is upon a different cause of action, the judgment in the first action is conclusive only as to the matters essential to the judgment which were actually litigated and determined therein. * * *."

Plaintiff contends his claim upon *quantum meruit* is a different cause of action than his claim on the express contract. This brings into issue the definition of the term "cause of action" as it relates to the law of res judicata. "Cause of action" is a "slippery" term which is used to express different concepts in different contexts.[1]

The principal purposes of res judicata are prevention of harassment of defendants by successive legal proceedings as well as economy of judicial resources. Its scope is related to the limits upon the various forms of relief which may be requested in one proceeding and the limitations upon amendments to pleadings during trial. As permissible joinder of requests for various forms of relief and amendments during trial become broader and more liberal, the reasons behind res judicata dictate that parties to actions be required to make use of such liberal procedures and not be permitted to protract litigation through a multiplicity of suits or actions which can be disposed of in one proceeding. See Clark on Code Pleading 472-78 (2d ed 1947) ; also, *Jarvy v. Mowrey,* 235 Or 579, 583, 385 P2d 336 (1963). Therefore, with

---

[1] See Introductory Note to "What Constitutes the Same Cause of Action," Restatement of the Law of Judgments 239, ch 3 (1942). Also see McGrath v. White Motor Corp., 258 Or 583, 588, 484 P2d 838 (1971); Elliott v. Mosgrove, 162 Or 507, 543-45, 91 P2d 852, 93 P2d 1070 (1939).

the advent of code pleading and the abandonment of rigid common law forms, the definition of "cause of action" has tended to expand. As pointed out in Clark, *supra* at 127:

> "At common law the number and extent of the grievances for which the plaintiff might seek redress in a single suit were arbitrarily limited by forms of action. In equity, principles of trial convenience alone applied. The codes adopted the equity rule in substance, but attempted to give it precision by the concept 'cause of action,' denoting a single occasion for judicial relief."

Having in mind the purposes to be served by the application of the doctrine of res judicata, we agree with Clark in the following:

> "Various more or less conflicting views of the nature of a single cause of action are expressed by courts and authors. The most convenient one is to consider a cause of action as an aggregate of operative facts giving rise to a right or rights termed 'right' or 'rights of action' which will be enforced by the courts. The number and extent of operative facts included within a single cause of action are to be determined pragmatically, mainly by considerations of practical trial convenience. There is no absolute or arbitrary test." Clark on Code Pleading at 127.

Clark further states at 137:

> "The codifiers seem to have had in mind the cause of action as consisting of facts which should afford ground or occasion for the court to give judicial relief of some kind, but as not limiting the form or amount of such relief. This is shown by their emphasis upon 'the facts' as 'constituting the cause of action' and upon their attempt to get away from the legal subdivisions of the previous systems and to keep legal theories of recovery out of the pleadings proper. * * *." (Footnote omitted.)

If in the present case we apply Clark's concept of "cause of action" for res judicata purposes, it becomes apparent that there is but a single occasion for judicial relief, even though there are alternative contentions concerning the circumstances under which they were rendered and thus alternative grounds or theories for recovery. To the extent that a given state of facts is susceptible to alternative interpretation and analysis, plaintiff must seek and exhaust all alternative grounds or theories for recovery in one action.

■ Plaintiff claims to have rendered only one set of services. Nothing prevented him from presenting his claim against the receiver on the alternative theories of express contract and *quantum meruit* and from having them both adjudicated at the same time. Having once litigated his claim against defendant, he should be foreclosed from further litigation on all grounds or theories of recovery which could have been litigated in the first instance. The public policy to be served by the doctrine of res judicata prevents him from having two bites at the apple. In *Developments in the Law—Res Judicata,* 65 Harv L Rev 818, 826 (1952), the following statement is found:

> "* * * [T]here are recent decisions allowing successive suits on theories of express and implied contract, or even alternative theories of express contract. Decisions such as these seem to undermine an important aspect of the reformed procedure." (Footnotes omitted.)

For a case which holds that an adverse judgment on an action on an express contract is a bar to a subsequent action on *quantum meruit,* see *Golden v. Mascari,* 63 Ohio App 139, 25 NE2d 462 (1939). For the purposes of the application of the statute of limitations we have

held that an amended complaint on *quantum meruit* is a restatement of the same cause of action as that in the original complaint on an express contract. *Richardson v. Investment Co.,* 124 Or 569, 571-72, 264 P 458, 265 P 1117 (1928).

■ Many cases decided on the *specific question* are contrary to the above conclusion and authority. In *Jarvy v. Mowrey, supra,* a decedent's estate filed suit against decedent's sister to secure the return of certain bank accounts transferred to the sister by decedent. In defense, the sister alleged that the money was paid to her in payment of an indebtedness and attempted to prove she earned the money caring for the decedent. Her pleadings were ambiguous as to whether her claim was for the reasonable value of her services or upon her right under a specific contract, or both. Upon trial the sister lost and was required to return the money to the estate. Thereupon the sister brought an action on implied contract for the reasonable value of her services. In discussing the problem, the court said:

"The difficulty in the present case lies in determining the nature of the defensive claim asserted by Jarvy in the first case. If the defense found in the amended answer is construed as one alleging only an express contract, as the present plaintiff now apparently contends, then a later action upon an implied contract would not necessarily be barred. See, e.g., *Pillsbury v. Early,* 324 Ill 562, 155 NE 475 (1927); *Smith v. Kirkpatrick,* 305 NY 66, 111 NE2d 209 (1953); *Roberts v. Lee,* 72 Ohio App 235, 51 NE2d 108 (1942); 2 Freeman, Judgments 1552, § 736 (5th ed 1925); Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?,* 21 Or L Rev 319, 338 (1942). But see *Golden v. Mascari,* 63 Ohio App 139, 25 NE2d 462 (1939); Note, *Developments in the Law—Res Judicata,* 65 Harv L Rev, supra at 826. The cases gen-

> erally note that the evidence necessary to establish an express contract may be different from that needed to prove a right to recover in *quantum meruit.* See, e.g., *Buddress v. Schafer,* 12 Wash 310, 312, 41 P 43 (1895). Accordingly, the failure to prove an express contract will not always bar an action upon an implied contract where no court has ever passed upon the facts necessary to prove the existence of the implied obligation. *Smith v. Kirkpatrick,* supra. * * *." 235 Or at 584.

However, the opinion held the sister could not take advantage of the ambiguity of her pleadings in the first case and that the court in the first case necessarily passed upon her right to recover under the theories of both express and implied contract. The above quotation, therefore, is dictum. In so deciding, this court said:

> "The evidence produced in the two cases drew the trial court's attention to the factual raw material upon which first the claim of receipt of payment of a debt and now the claim that there was an implied contract must equally be based. The only element that is significantly different between the two cases is the pleader's theory of what those facts meant. It is true that upon the second trial there was some circumstantial evidence that had been omitted in the first case, but that fact does not essentially change the situation. * * *." 235 Or at 586-87.

This language sounds as if the court in the second case was taking the Clark definition of "cause of action," *i.e.,* an aggregate of operative facts which compose a single occasion for judicial relief, and blending it with one of the many other definitions that have been offered, that is, if the evidence needed to sustain two proceedings is different, those proceedings do not involve the same cause of action. This latter definition of cause of action, the "same evidence" test,

is discredited by Restatement of the Law of Judgments § 61 (1942), which states that if the evidence needed to sustain the second action would have sustained the first action, the causes of action are the same, but that the contrary is not true. *Comment a.* of that section contains the following:

"* * * Although the evidence needed to sustain the second action would not have sustained the first action, the plaintiff may be precluded by the judgment in the first action from maintaining the second action. Situations in which the plaintiff is precluded from maintaining a second action although the evidence needed to maintain it could not have been introduced in the first action are dealt with in §§ 62-67. Thus, if the plaintiff suffers harm to his person and property in an automobile collision and brings an action for the harm to his person, a judgment in that action precludes him from maintaining a second action for the harm to his property, although under the pleadings evidence of this harm was inadmissible in the first action (see § 62). So also, if the plaintiff suffers harm in an automobile collision and brings an action in which he alleges that a defendant was negligent in driving too fast, a judgment in the action precludes him from maintaining a second action for the same harm in which he alleges that the defendant was negligent in operating a car with defective brakes, although the evidence as to the brakes was inadmissible in the first action (see § 63)."

As the quoted material from *Jarvy* points out, the usual basis for cases holding that proceedings upon express and implied contract involve a different cause of action, despite the unity of the underlying facts, is that the evidence necessary to sustain the two proceedings is different. Opinions of this court which illustrate that in order to be considered the same cause

of action for res judicata purposes the two proceedings *do not* have to be sustained by the same evidence are: *Barber v. Gladden*, 215 Or 129, 332 P2d 641 (1958); *Brown v. Brown*, 142 Or 275, 19 P2d 428 (1933); *Gust v. Edwards Co.*, 129 Or 409, 274 P 919 (1929); *Salene v. Isherwood*, 74 Or 35, 144 P 1175 (1914); *Yuen Suey v. Fleshman*, 65 Or 606, 133 P 803, Ann Cas 1915A 1072 (1913); *Belle v. Brown*, 37 Or 588, 61 P 1024 (1900). In *Gust v. Edwards Co., supra,* defendant first brought an action of replevin to recover possession of furniture and possession was taken under a bond. Plaintiff successfully defended but did not ask for damages for the wrongful detention of the furniture. Plaintiff (formerly defendant) then brought an action for such damages. The court held the second action was barred by res judicata and said at 410-11:

"* * * Plaintiff had her day in court relative to the question of damages. True, it was not made an issue in the replevin action, but it could have been. Damages were an incident of the main issue, that is, the right to possession of the property, and should have been adjudicated in that action. Modern authority frowns upon multiplicity of suits. Under the common law, damages could not have been made an issue in a replevin action, but this rule has been changed by statute so that all matters which are a part of a single controversy may be determined in one proceeding. In a replevin action each of the parties is, in a sense, an actor or plaintiff. Each may assert title and the right to possession of the property and may claim damages by reason of its wrongful taking and detention. It would thwart the purpose of the statute were we to so construe it as to allow a prevailing party in a replevin action to have a jury determine the main issue, or the right to possession of property, and, in another and independent proceeding, have a jury pass on an issue of damages which is only incidental

to and arises out of the wrongful retention of the property. A party should not thus be permitted to split a cause of action or defense. The damages alleged in this case arose out of the wrongful detention of personal property and should have been litigated in the former action. * * *."

In *Belle v. Brown, supra,* the court held that a decree partitioning the assets of an estate among the heirs was res judicata of a subsequent claim by some of the heirs that other heirs had received certain property from the decedent as advancements of their shares, even though this issue had not been litigated in the first case. At 37 Or 592-93, this court said:

"A party failing to assert a claim in a suit in equity, in which it might have been litigated with propriety, will not be permitted afterwards to enforce it in a second suit, unless his failure to do so in the first instance was caused by the fraud of his adversary, and was not attributable to his own negligence: *Stewart v. Stebbins,* 30 Miss. 66; *Burford v. Kersey,* 48 Miss. 642."

However, in the case of *Wagner v. Savage, as Adm'r,* 195 Or 128, 244 P2d 161 (1952), plaintiff brought a suit for specific performance of an agreement. She contended she had entered into an oral agreement with defendant's decedent to keep house for him the rest of his life in return for his promise to leave his worldly goods to her upon his death. The case was tried and resulted in a decree for defendant. Plaintiff then brought an action for the reasonable value of her work arising out of the same services for defendant's decedent and defendant pleaded res judicata. With little if any discussion of the rationale of res judicata and for reasons which are not clear, this court held that plaintiff could recover. This was a direct holding which is contrary to our ruling here.

■ Although the vast majority of the cases in the United States hold, as demonstrated by *Wagner* and the dictum in *Jarvy,* that an adverse judgment on an action upon an express contract is not a bar to a subsequent action for the reasonable value of one's services, it is submitted that, when the rationales behind res judicata are taken into consideration, such holdings are out of step with the freedoms of modern practice and procedure. It is also submitted that the dictum in *Jarvy* and the holding in *Wagner* are incompatible with the rationale of other Oregon cases in the field of finality of judgments and must be overruled.

■ Since, however, we are unable to determine whether or not plaintiff relied upon the then state of Oregon law (the dictum in *Jarvy* and the holding in *Wagner*), the change in the law will be applied only prospectively; therefore, in this instance the judgment of the trial court is reversed and the case is remanded for a new trial on the theory of *quantum meruit.* This is one of those situations in which a trial judge is reversed for being right.